JS 44
(Rev. 12/96)

# ORIGINAL
# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Robert W. Reynolds

**DEFENDANTS**

Robert Melton, Thomas Taylor, Paul Garner, Kevin Smith, and KPMG, L.L.P.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Tarrant
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

RECEIVED

AUG 22 2002

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Douglas R. Larson
ATTORNEY AT LAW
410 W. Main, Suite 101
Mesquite, Texas 75149

ATTORNEYS (IF KNOWN)

3-02CV 1805R

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R R & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury — Med Malpractice | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | ☐ 365 Personal Injury — Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | ☐ 791 Empl Ret Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | | | |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | | | |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | | |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | | |
| ☒ 442 Employment | **HABEAS CORPUS:** | | | |
| ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

A suit for damages for violation of constitution under
42 U.S.C. § 1983

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE  Jorge A. Solis
DOCKET NUMBER 3:CV-01-2424-P

DATE
August , 2002

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT W. REYNOLDS,           §
        Plaintiff             §
                              §
VS.                           §        CIVIL ACTION NO. .
                              §
ROBERT MELTON, THOMAS TAYLOR, §        3-02CV 1805R
PAUL GARNER, KEVIN SMITH,     §
and KPMG, L.L.P.              §
        Defendant             §

AUG 2 2 2002

CLERK, U.S. DISTRICT COURT
By
        Deputy

**PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**INTRODUCTION**

1. This is a civil action seeking money damages, declaratory and other legal and equitable relief to redress violations of Plaintiff's rights under the laws of the United States. Plaintiff has been denied his right to freedom from retaliation for the exercise of his First Amendment right to freedom of speech. Because of the acts and omissions of the Defendants and/or their failure in their statutory and constitutional duties to protect the rights of your Plaintiff, the Plaintiff has sustained damages.

**JURISDICTION**

2. Jurisdiction over this action exists by virtue of 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 2201. Plaintiff's claims arise pursuant to 42 U.S.C. §§ 1983 and 1988.

**VENUE**

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**     **-- Page 1**

3.    At all relevant times the individual Defendants were residents of Dallas County, Texas.  All of the Defendants, save Robert Melton, are located within the judicial district of this Court, and all of the events complained of occurred within the judicial district of this Court.

### PLAINTIFF

4.    Plaintiff, Robert W. Reynolds, is a male citizen and resident of the United States and the State of Texas.  Plaintiff was at all relevant times herein a resident of Tarrant County, Texas.

### DEFENDANTS

5.    Defendant Robert Melton and/or Defendant Thomas Taylor were at all times relevant hereto the duly appointed Auditors for the City of Dallas, Texas.  At all times they acted pursuant to their authority as the chief policy makers and enforcers of policy for the City of Dallas Auditor's Office.  All of their respective actions, including the ones the Plaintiff alleges they took against the Plaintiff, were taken under color of state law.  Defendants Melton and Taylor were the final decision and policy makers regarding the employment decisions for which the Plaintiff brings this suit.   Defendants Melton and Taylor are sued in their individual capacity.

7.    Defendant Paul Garner is an employee of the City of Dallas, Texas and at all relevant times was Audit Manager in the Dallas Auditor's Office.  When Garner committed his illegal acts, he was a probationary City of Dallas employee and would have done

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND    -- Page 2**

anything either Melton or Taylor asked him to do.  Because Garner
was at all relevant times a City of Dallas employee, he acted under
color of law.

8.  Defendant Kevin Smith is an Audit Manager with the KPMG,
L.L.P. accounting firm.  At all relevant times Defendant Smith was
responsible for the KPMG audit of the City's books.  This service
had been performed for several years.  Smith acted under color of
law because he was acting in conjunction with the other individual
Defendants who were City of Dallas employees who were acting under
color of law.

9.  Defendant KPMG, L.L.P. is and has been the City of Dallas'
audit firm for six of the last eight years.  In addition to annual
audits for the City, Defendant KPMG has been awarded numerous
consulting contracts by the City of Dallas.  In 1999 and 2000,
Defendant KPMG was awarded more than $2 million dollars of city
contracts.  Defendants Taylor and Melton participated in the award
of those contracts to Defendant KPMG.  KPMG is the employer of
Smith.

10.  Defendants Smith and KPMG have acted under color of law
because they agreed with Defendants Melton, Taylor and Garner to
improperly select an "employee" named Saucedo to a position with
the City of Dallas at a time when all of the Defendants knew the
Plaintiff was the person who had the superior qualifications for
the position.  Each individual Defendant knew that Defendants
Melton and Taylor preferred Saucedo because Melton and Taylor
desired to punish the Plaintiff for having exercised his First

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND    -- Page 3**

Amendment rights in reporting misconduct.  The Plaintiff was under a legal and ethical obligation to report Melton's, Taylor's and KPMG's misconduct to the Dallas City Council and/or to the Board governing the conduct of Certified Public Accountants.

11.  The Plaintiff is a White male presently age sixty-five (65).  The Plaintiff holds two college degrees.  One is a Bachelor in Science in Accounting awarded in 1958 from Louisiana State University in Baton Rouge, Louisiana.  The other is a law degree, a Doctor of Jurisprudence, obtained from the South Texas College of Law in 1968.  The Plaintiff is a Certified Public Accountant, a Certified Fraud Examiner and is licensed to practice law in the State of Texas.  On numerous occasions, the Plaintiff has been recognized for his expertise in Government Accounting and auditing as well as his knowledge, training, experience and expertise in the accounting profession.

12.  Since 1995 the Plaintiff has been employed as an auditor for the City Auditor's Office for the City of Dallas, Texas.  Because of his knowledge of accounting and the assignments he received in the course and scope of his employment, the Plaintiff became aware of several City of Dallas internal financial problems and financial discrepancies.  These matters included the following:

a.  In February, 1999 the then City Auditor, Robert Melton, as well as an accounting firm, KPMG, approved the submission of an annual budget estimate to the Dallas City Council.  This "forecast" misrepresented the amount of expected revenue in that it misstated expected sales tax revenues, included Railtrain as an enterprise

fund, misstated the net amount of expected revenues from Dallas Water Department. Additionally, the report materially under reported water utility expense as well as reimbursement due the City from the storm water fund. The proposed budget did not include disclosures of the cash balances, current obligations and certain long term debts. Further the "budget" estimate or forecast violated state law and the Dallas City Charter.

b. In April of 1999, Thomas Taylor both certified and participated in the preparation of the matters contained in the accounting work of the City's Health Care Benefits account. Because Taylor was and is a Certified Public Accountant ("CPA"), he could not ethically participate in a audited certification of his own work. A CPA may only certify another accountant's work after the CPA has conducted an independent evaluation of another accountant's work. Taylor, with Melton's knowledge and approval, nevertheless certified his own work and violated ethical standards expected and required of a CPA.

c. Throughout 1999 and 2000, the Plaintiff, in the course and scope of his employment, investigated the City's Cash Receipts account as well as the Accounts Receivable account. A certified audit of these accounts was impossible because of the very poor record keeping that had been utilized by those City employees who had the responsibility for these accounts. In addition to the poor record keeping, inadequate controls were utilized that would not ensure that the money credited to the City's Cash accounts and Accounts Receivable account was either true or accurate. These

discrepancies made it more probable than not that City employees had either misappropriated funds or that the City employees responsible for these accounts were grossly incompetent.  Previous to the Plaintiff's investigation into these matters, Melton or KPMG were aware of these discrepancies but they had not timely advised the Dallas City Council and/or City Manager of these matters, but instead covered them up.  In the course of his investigation, the Plaintiff concluded and recommended that these accounts be closed because they were incapable of reconciliation or correction.  The Plaintiff then recommended that these accounts be re-opened with appropriate controls and documentation being put into place.  This advice was not followed but ignored.  To this date the City does not know how much money it has or how much it can expect to be collected.

d.    The Plaintiff also discovered that the City, for unexplained reasons, had not undertaken timely efforts to collect motel and hotel taxes in sums exceeding 1.5 million dollars.  As City Auditor, Melton had not timely informed City officials of this failure.  Delay in the collection of these funds has rendered at least half of the uncollected 1.5 million dollars in taxes uncollectible.

13.    As the above matters contained in paragraph 12 were discovered by the Plaintiff in 1999 and 2000, the Plaintiff timely reported and updated developments regarding these matters to the Dallas City Council, Finance Committee, namely Mary Poss and/or Alan Walne.  KPMG, Melton and Taylor resented and objected to the

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND    -- Page 6**

Plaintiff's reports.

14.   In the Spring of 2000 Defendant Melton's two year term as City Auditor expired.   Melton demanded that members of the City Auditor's Office engage in a letter writing campaign to be given to City Council members as well as the Council's auditor selection committee suggesting and recommending to the City Council that Melton be reappointed as Dallas' City Auditor.   The Plaintiff refused to participate in this effort and instead told members of the City Council Finance Committee of his reluctance to support Melton's reappointment.   The Plaintiff also reminded the Council of the problems listed above in paragraph 12.   On April 26, 2000 the Dallas Mayor, Ron Kirk, told Melton that he expected that Melton would not retaliate against the Plaintiff.

15.   Fearing that he would not be reappointed as the Dallas Auditor, on or about January 19, 2000, Melton secretly and without the knowledge of the Dallas City Council, sought other employment. In March, 2000 Melton accepted a job as an assistant auditor for Pinellas County in the state of Florida.   Melton began his employment in Pinellas County, Florida in June, 2000.   Meanwhile, the Dallas City Council, on April 26, 2000, in a divided vote, decided to ignore Melton's failings as Auditor and reappointed Melton as Auditor for another two year term.   After this reappointment occurred, Melton dishonestly decided to accept the reappointment even though he had previously accepted the Florida County Auditor's position.   This dual employment allowed Melton to exercise control over the Dallas' Auditor's Office, collect two

salaries, control the potential adverse publicity against him and also insulate Melton for his planned retaliation against the Plaintiff.  For two years prior to April, 2000 Melton and Taylor harbored a desire to retaliate against the Plaintiff for the Plaintiff's reports to the City Council regarding Melton's and Taylor's failings in the operation of the Dallas Auditor's Office as well as for the Plaintiff's refusal to support Melton's reappointment as auditor.

16.   Throughout June, July and until shortly after the first of August, 2000, Melton controlled the operation of the Dallas Auditor's Office from Florida.  Melton accomplished this by the use of the mail, telefax and telephone.  Taylor participated in this charade and it ended in August, 2000 only after a local newspaper published an article exposing that Melton was not on the job.  In August, after a City Council inquiry, the City Council accepted a belated resignation from Melton but back dated the date of the resignation to June 19, 2000.  In August, 2000 Taylor was made Melton's replacement as City Auditor.

17.   In May, 2000 Defendant Taylor was advised of Melton's dual employment as well as of Melton's desire to retaliate against the Plaintiff but Taylor kept Melton's dishonesty secret.  Taylor eagerly joined Melton's effort at retaliation because the Plaintiff had also reported Taylor's misconduct to the City Council and to the Board of Certified Public Accountants.  Taylor had other motives for joining in Melton's retaliation efforts against the Plaintiff.  This was because Taylor's son was an accountant and a

manager with KPMG and the Plaintiff had informed the City Council of KPMG's failings as accountants and/or auditors. Taylor desired to protect his son's status at KPMG as well as his son's share of KPMG's profits for the "services" performed by KPMG for the City of Dallas.

18. On or about May 1, 2000, Melton, acting for the City Auditor's Office publically advertised his intention to fill the position of Audit Manager 58. The position became available due to the retirement of Jon Coffee on April 18, 2000. Melton's advertisement was intended as a signal to the Plaintiff that he did not intend to promote from within the Auditor's Office. Plaintiff Reynolds applied for and was deemed qualified for this position by the Dallas Civil Service Department. The Plaintiff was never interviewed for the position because both Taylor and Melton wished to retaliate against the Plaintiff because of the Plaintiff's reports of misconduct.

19. Prior to the selection process, Joe R. Saucedo, Jr. (Hispanic/Male/Age 50), was not a City employee. Saucedo was interviewed on June 20, 2000 by Defendant Taylor. This interview occurred with the knowledge and approval of Defendant Melton. Defendant Taylor with Melton's approval offered Saucedo the position of Audit Manager 58. This offer of employment was confirmed by a letter from Taylor dated June 21, 2000. Saucedo's interview, as well as the offer, was extended in violation of several Civil Service rules. The Civil Service closing date for applications for the Audit Manager's 58 position was May 13, 2000.

Mr. Saucedo's application was not prepared until May 15 and not received by the City until May 18, 2000.  Additionally, Saucedo did not meet the published minimum Civil Service criteria necessary to fill the position.

20.  Defendant Melton announced Saucedo's appointment on July 7, 2000. In making the announcement, Melton said that, "Mr. Saucedo . . . enhances the diversity of our office", and that his employment would not commence until September.

21.  On or about July 3, 2000 Plaintiff learned that the position had been given to Saucedo by Melton and Taylor, and on July 6, 2000 Plaintiff filed a grievance directed to Defendant Melton.  The grievance concerned Melton's and Taylor's violation of Civil Service Ordinances and Rules and the denial of the Plaintiff's promotion to Audit Manager 58.  The grievance was filed because Saucedo was not the most qualified and because the appointment of Saucedo violated the City's Civil Service Rules. Defendant Melton ordered Defendant Taylor to deny the Plaintiff's grievance.   This occurred on July 12, 2000. On July 18, 2000 Plaintiff appealed the denial of his grievance and sent a copy to the Secretary of the Civil Service Board. (At this time Defendant Taylor was out of the country on vacation, and Defendant Melton was attempting to hold down the job as Dallas Auditor while working at the Assistant Auditor position in Florida.)

22.  Upon hearing of the violation of the Civil Service Rules by Saucedo's appointment, the Civil Service Department advised Taylor/Melton that Saucedo's appointment was invalid.  On August

17, 2000 Defendant Taylor notified Plaintiff by a memo that
Plaintiff had raised several valid concerns about the manner in
which the position of Audit Manager had been filled. (This
constitutes an admission that Defendants Melton and Taylor violated
the Civil Service rules and retaliated against and/or discriminated
against Plaintiff in the selection process for the Audit Manager 58
Position.)  In the same August 17, 2000 memo, Defendant Taylor
indicated that he would interview "the three candidates who have
expressed a desire to be promoted into the audit manager's
position." Because Saucedo was not a City employee, Saucedo could
not be "promoted".  Because of this, the memo appeared to exclude
Saucedo.

23.   The interviews that Defendant Taylor proposed in his
August 17, 2000 memo were in reality a plot by Taylor to validate
the selection that he and Melton had made two months earlier.  On
August 18, 2000, another applicant (Ms. Hampden), Mr. Saucedo and
Plaintiff were interviewed by Defendant Thomas M. Taylor, Defendant
Paul Garner, and Defendant Kevin Smith, an employee on behalf of
Defendant KPMG, L.L.P.

24.   This August 17, 2000 interview was in reality a sham
and/or a coverup of the decision by Melton and Taylor to retaliate
against the Plaintiff. In an attempt to justify Plaintiff's non-
consideration for this promotion, false and/or misleading materials
were placed in the Plaintiff's personnel file.   During the
interview process, Defendants Taylor, Garner and Smith were openly
hostile, contemptuous and uncivil to the Plaintiff.

<u>**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**</u>    -- Page 11

25.  The composition of the interview panel was designed by Taylor to select Mr. Saucedo for the Audit Manager Position. Defendant Taylor made it clear to Defendants Garner and Smith that it was their obligation and/or duty to select Saucedo.

26.  On August 17, 2000 Defendant Garner was a new employee to the City and as an IT Audit Manager in the Auditor's Office, having been employed for only two months. In August of 2000, Garner was a probationary employee and specialized in Information Technology audits. He was not in a position of independence because his job was not protected by Civil Service rules until he was employed for more than six months.  Because Taylor was the person primarily responsible for Garner's achievement of permanent employment status over probationary status, Garner eagerly agreed with Taylor to select Saucedo for the "promotion".  Because Garner was not a CPA, as was Taylor and Smith, he was not in a position to objectively evaluate Taylor and Smith's misconduct as CPA's.

27.  Defendant Kevin Smith is an Audit Manager with the KPMG L.L.P. accounting firm.  Prior to 2000 Defendant Smith was responsible for the KPMG audit of the City's books for several years.

28.  Defendant KPMG L.L.P. is and has been the City of Dallas outside audit firm for six of the last eight years. In addition to annual audit for the City, Defendant KPMG has been awarded numerous consulting contracts by the City of Dallas.  In 1999 and 2000, Defendant KPMG was awarded more than $2 million dollars in city contracts. Defendant Taylor participated in the award of those

contracts to Defendant KPMG.   KPMG, therefore, was indebted to Taylor and thusly they were willing to do Taylor's bidding.

29.   Taylor's son (T. Nolen Taylor) was and is a manager with the Dallas office of Defendant KPMG L.L.P. The use of a fellow KPMG manager, Defendant Kevin Smith, by Taylor in the job interview involving the Plaintiff and Saucedo, dispels any notion of objectivity in the interview process.   Smith, Taylor and Garner ignored the Plaintiff's obvious qualifications and favorable job performance evaluations as well as the annual evaluations received by Plaintiff.   Because Smith and Garner were indebted to Taylor, they  eagerly agreed to confirm Taylor's selection of Saucedo.

30.   Taylor, Smith and Garner, at the Plaintiff's interview, claimed that the Plaintiff berated the quality of the work by Defendant KPMG. At the interview, Plaintiff reminded Taylor, Garner and Smith that he was concerned about problems relating to controls for the reconciliation of the City's bank account, the failure to properly account for accounts receivable, the incomplete listing of grant funds included in an audit, and other errors in the City's financial statements.   All of these matters were true, but the Defendants Taylor and Smith/KPMG were not willing to recognize their complicity in the failure to address these issues in a meaningful manner and/or to take the necessary corrective action. Instead, these Defendants with the complicity of Defendant Garner used the interview process to berate and criticize the Plaintiff for his valid reports of misconduct.

31.   Since the date of the interview(August 18, 2000),

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND   -- Page 13**

Defendant KPMG has acknowledged the truth of the reports made by Plaintiff, and has admitted that there are serious control issues relating to the City's bank account and accounts receivable. Defendant Taylor issued another report confirming the Plaintiff's reports to the Council that details the problems relating to the City's grant funds, which had been audited by Defendant KPMG.

32.  In spite of the truthfulness of the Plaintiff's reports of misconduct, at the Plaintiff's August 18, 2000 interview Defendants Taylor, Smith and Garner berated the Plaintiff for his criticisms, including the Plaintiff's criticisms of Taylor's violation of the CPA rules of professional conduct by supervising an audit and editing a report that involved a department he managed. (See paragraph 12 above.) (Since August 18, 2000 Defendant Taylor has acknowledged that he should not have participated in this audit and disingenuously claims that he was only following the orders of Defendant Melton.)

33.  On August 24, 2000, Defendant Taylor notified Plaintiff that Mr. Saucedo had been selected as Audit Manager 58.  Mr. Saucedo's employment as Audit Manager 58 with the City of Dallas officially began on August 28, 2000.

34.  At the request of Melton and Taylor, on May 25, 2000 a job request form was forwarded to Civil Service to fill a second promotional position of Investigative Audit Manager 58. Over the next 30 days, there was a substantial amount of correspondence between the Auditor's office and the Civil Service Department regarding the qualifications for this position. Among this

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**   **-- Page 14**

correspondence was a memorandum dated June 14 from Defendant Taylor to Mr. Eddie Thames, Human Resources Analyst, which outlined the job specifications for this position. This job description was altered by Taylor so that the position could be filled by Hector Collazo (Hispanic-Male), a "Senior Investigative Auditor 56". This is because Collazo was been pre-selected by Taylor and Melton and was intended to exclude the Plaintiff from consideration for this vacant position.

35.   In August, 2000 Collazo had been employed by the City Auditor's Office since August 1997. He was an Investigative Auditor until August 1999, when he was promoted to Senior Investigative Auditor 56 with supervisory responsibilities over one person. Collazo had minimal management experience and he was much less qualified for advancement than the Plaintiff.

36.   The final Civil Service required promotional announcement for the Manager 58 position indicated that qualifications could include a Bachelor's degree in Psychology. This specific degree category was not included in the previous education requirements established in the Civil Service job postings.   It was the undergraduate degree held by Hector Collazo.

37.   Melton and Taylor, with the aid of unknown persons in the Civil Service, changed or altered the specifications for the Investigative Audit Manager position and specifically tailored them so that Hector Collazo would falsely appear to be qualified.

38.   This position was advertised on or about June 26, 2000. The Civil Service form announcing the job opening stated: "This

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**   -- Page 15

position will become vacant on 7/26/00 when the current manager retires." (The manager holding the position did not retire until February 2001.)

39. Shortly after the position was advertised, Plaintiff asked Defendant Taylor as to whether or not this was the same as the Audit Manager position that was previously advertised. Taylor falsely reported that he did not know, and indicated that Plaintiff would have to check with Defendant Melton. It was not possible for Plaintiff to check with Defendant Melton because Defendant Melton was already working at his new job in Florida.

40. The Plaintiff applied for the position that was tailored to fit Collazo's educational background. The Plaintiff was notified that he was placed on the Civil Service register as of July 17, 2000. According to Ms. Catherine Turner, Assistant Director of the Civil Service Department, this Investigative Audit Manager position was filled by Taylor and/or Melton's appointment with Mr. Hector Collazo on July 19, 2000. The payroll change for Mr. Collazo was purportedly signed by "Robert Melton" on July 18, 2000 even though Defendant Melton was not in the auditor's office on that date.

41. Purposely overlooked by all of the Defendants was that the Plaintiff's over-all job performance was superior. One of the 1999 audits conducted by the Plaintiff, a *"Performance Audit of the Employee Health Benefits Program Administered by the Department of Human Resources "* was nominated for an award offered by the

National Association of Local Government Auditors.

42.   Annual evaluations of employees in the Auditor's Office were supposed to occur each November. The Plaintiff made several attempts to obtain an explanation as to why the Plaintiff's annual review for fiscal year 1998-1999 was not done in a timely manner (November, 1999).   Plaintiff did not receive an answer. After Plaintiff filed a Civil Service grievance over this matter, the Plaintiff's evaluation for fiscal year 1998-1999 was belatedly done on May 30, 2000.  Because this evaluation was late and because it falsely criticized the Plaintiff's work performance, it is fair to contend that it was dishonestly prepared to create a false justification to deny the Plaintiff advancement.   This false evaluation was submitted by Melton and Taylor in spite of the Plaintiff's national recognition as an auditor that occurred in 1999.

43.   When the Plaintiff's annual evaluation was completed on May 30, the Plaintiff was falsely told by Defendant Thomas M. Taylor that Robert Melton (City Auditor) believed that Plaintiff had a negative influence on the younger employees in the office. Because this accusation by Defendant Melton was totally false, Plaintiff asked to be provided specific details as to the source and basis for these claims. Because these claims were false, there was no response to Plaintiff's request for this information. On July 6, 2000, Plaintiff filed a grievance directed to Defendant Melton regarding the failure to provide this information.   Even though there was no evidence to support the claim that the

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**   -- Page 17

Plaintiff was "a negative influence", this grievance was denied. Defendants Melton and Taylor's failure to provide evidence for this claim constitutes evidence of retaliation.

44.   On July 19, 2000, Collazo, in his role as an Investigative Audit Manager 58, initiated job request forms for Investigative Auditor 55 and 56 positions. These positions were made to enhance Collazo's Investigative Audit Manager's staff. These forms were purportedly signed by "Robert Melton" even though Defendant Melton was not in the auditor's office on that date. An advertisement for these positions appeared in the *Dallas Morning News* on Sunday, July 30, 2000 and in the Civil Service listing on July 31, 2000.   These actions indicate Collazo was acting as a Manager 58 even though he had not been lawfully promoted in accordance with established Civil Service rules.

45.   After learning that Collazo was acting as if he was a Manager 58, on August 3, 2000 Plaintiff filed a Civil Service grievance concerning the denial and the failure by Taylor and Melton to consider the Plaintiff's application for promotion to Investigative Audit Manager 58. On August 24, the Plaintiff was informed that the Plaintiff's grievance was denied. On that same date, Plaintiff appealed the denial of his grievance to Defendant Thomas M. Taylor. Defendant Taylor denied this appeal. Defendant filed an appeal concerning his denial of promotion with the Secretary of the Civil Service Board on August 28, 2000.

46.   On September 5, 2000, Defendant Taylor falsely indicated that the actions to fill the Investigative Audit Manager position

awarded to Collazo have been rescinded and the selection process could not be grieved.   To cover up that Collazo was actually promoted and to support his lie that the matter was not the proper subject of a grievance, beginning on October 19, 2000 Mr. Collazo was referenced by Taylor as a "Back-up Investigative Audit Manager."  In spite of Taylor's false representations that Collazo was not promoted, Mr. Collazo acted and performed duties as if he had been promoted and he regularly attended management briefings and meetings.   Collazo received pay commensurate with a promotion to Investigative Audit Manager 58.

### PLAINTIFF'S CAUSE OF ACTION AGAINST INDIVIDUAL DEFENDANTS MELTON, TAYLOR, SMITH, GARNER AND KPMG

47.   For his cause of action the Plaintiff relies upon and alleges all of those facts contained in paragraphs 1 through 46 herein.

48.   Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983 which in relevant part makes actionable Defendants' violations of the Plaintiff's rights secured to the Plaintiff by the First Amendment and Fourteenth Amendments to the United States Constitution.

49.   The Plaintiff was the most qualified person, if not the only qualified person, who in the Spring and Summer of 2001 made application for three vacant Manager 58 positions in the Dallas City Auditor's Office.  Because the Plaintiff is an employee of a city which is granted civil service protection to its employees, the Plaintiff has a property interest in his job as well as in the

Civil Service process that allows City employees to seek advancement. The individual Defendants, including KPMG, agreed among themselves and others presently unknown to the Plaintiff, to deny the Plaintiff advancement in his employment. This agreement violated both the First Amendment and Fourteenth Amendment to the United States Constitution because the refusal to provide the Plaintiff's advancement in retaliation for the Plaintiff's reporting of misconduct committed by Defendants Melton, Taylor and/or KPMG. In seeking to punish the Plaintiff for his reports of misconduct, the Defendants ignored statutory Civil Service requirements which were designed to prevent retaliation and to insure that only the most qualified are awarded Civil Service advancement in employment. These Civil Service rights are property recognized by the Fourteenth Amendment.

50. By refusing to promote the Plaintiff, the Defendants violated the Plaintiff's established rights secured to him by the First Amendment and Fourteenth Amendment to the United States Constitution. These refusals are actionable pursuant to 42 U.S.C. § 1983. Specifically, by refusing to promote the Plaintiff because of his reports of irregularities, the Defendants violated Plaintiff's right of freedom of speech and his property right to a Civil Service promotion free of retaliation and based solely on merit. Accordingly, Plaintiff seeks full compensatory damages against KPMG and the individual Defendants, as well as punitive damages against KPMG and the individual Defendants in their individual capacity in an amount sufficient to deter them and

others from similar conduct in the future.

      51.   Plaintiff requests a trial by jury.

WHEREFORE, Plaintiffs pray that this Court:

1.   Assume jurisdiction of this cause;

2.   Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 that the acts and omissions of Defendants deprived Plaintiff of his rights guaranteed by the laws and/or Constitution of the United States;

3.   Grant to Plaintiff a trial by jury;

4.   Award Plaintiff judgment against Defendants for the damages set forth hereinabove;

5.   Award the costs of prosecution of this action to Plaintiff;

6.   Award to Plaintiff from Defendants the reasonable and necessary attorney's fees for the prosecution of this action; and

7.   Award to Plaintiff such other additional or alternative relief as may appear to the Court to be proper.

Respectfully submitted,

THE LAW OFFICE OF DOUGLAS R. LARSON
410 W. Main Street, Suite 101
Mesquite, Texas  75149
(972) 329-0160
TELEFAX:  (972) 329-6180

By: _____
Douglas R. Larson
State Bar No. 11958000

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**    -- Page 21